1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE SANCHEZ, ISMAEL RAMOS CONTRERAS, and ERNEST GRIMES, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OFFICE OF BORDER PATROL; UNITED STATES CUSTOMS & BORDER PROTECTION; DEPARTMENT OF HOMELAND SECURITY; JOHN C. BATES, Chief Patrol Agent, Blaine Sector of the United States Border Patrol, in his official capacity; JANET NAPOLITANO, Secretary, Department of Homeland Security, in her official capacity; DAVID AGUILAR, Acting Commissioner, United States Customs & Border Protection, in his official capacity; MICHAEL J. FISHER, Chief of the United States Border Patrol, in his official capacity; and JAY CUMBOW, Agent in Charge for the Port Angeles Office of the Olympic Peninsula of the United States Border Patrol, in his official capacity,<br><br>                    Defendants. | No. _____<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF<br><br>CLASS ACTION |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## INTRODUCTION

1.     This civil rights lawsuit seeks to vindicate the rights of individual Plaintiffs and Class Members who have been—and/or who have a present fear that in the future they will be—unreasonably seized and/or interrogated in violation of the Fourth Amendment of the United States Constitution by the United States Border Patrol and its agents located throughout Washington State's Olympic Peninsula.

2.     This action arises from the Border Patrol's practice of stopping vehicles or participating in vehicle stops on the Olympic Peninsula without appropriate reasonable suspicion in order to interrogate and unreasonably seize the occupants of such vehicles.

3.     Plaintiffs and Class Members hereby seek a declaration:

      a.     that Defendants have violated their Fourth Amendment rights;

      b.     that Defendants have exceeded their statutory authority;

      c.     that it is unlawful for Border Patrol agents to stop a vehicle or participate in a vehicle stop without a valid search or arrest warrant, unless the Border Patrol agent has a particularized reasonable suspicion based upon specific and articulable facts and rational inferences therefrom that an occupant of the vehicle is unlawfully in the United States.

4.     Plaintiffs and Class Members seek an injunction prohibiting Defendants from stopping vehicles or participating in vehicle stops:

      a.     without a reasonable suspicion that an occupant of the vehicle is unlawfully in the United States;

      b.     until each Border Patrol agent on the Olympic Peninsula has received training as to what constitutes reasonable suspicion for Border Patrol to stop a vehicle or for Border Patrol to participate in a vehicle stop; and

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

c.      until each Border Patrol agent on the Olympic Peninsula has demonstrated, through testing, that he or she understands what constitutes reasonable suspicion for a Border Patrol agent to stop a vehicle or to participate in a vehicle stop.

5.      Plaintiffs and Class Members additionally seek an injunction requiring:

a.      Defendants to maintain complete and accurate records that document that each agent has received training as to what constitutes reasonable suspicion to support a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop;

b.      Defendants to maintain complete and accurate records that document that each agent has been tested and understands what constitutes reasonable suspicion to support a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop; and

c.      Defendants to prepare documentation for all vehicle stops made by Border Patrol agents or in which Border Patrol agents participate, that sets forth in detail the basis for the reasonable suspicion used to justify the vehicle stop or interrogation of its occupants, and to maintain this documentation in such a manner that it is easily accessible for examination by a court-appointed special master for compliance, regardless of whether the Border Patrol ultimately determines that the occupant(s) stopped are undocumented citizens.

In support of this relief, Plaintiffs assert and allege as follows:

## PARTIES

6.      Plaintiff Jose Sanchez is a resident of Forks, Washington, on the Olympic Peninsula.  Plaintiff Sanchez is a correctional officer for Olympic Corrections Center.  Plaintiff Sanchez was born in the United States and is of Latino/Hispanic descent.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

7.      Plaintiff Ismael Ramos Contreras is a resident of Forks, Washington, on the Olympic Peninsula.  Plaintiff Ramos Contreras is an eighteen-year-old high school senior at Forks High School.  Plaintiff Ramos Contreras was born in the United States and is of Latino/Hispanic descent.

8.      Plaintiff Ernest Grimes is a resident of Neah Bay, Washington, on the Olympic Peninsula.  Plaintiff Grimes is a correctional officer at Clallam Bay Corrections Center and a part-time police officer for the Neah Bay Police Department.  Plaintiff Grimes was born in the United States and is African-American.

9.      Defendant Office of Border Patrol ("Border Patrol") is a subagency within the United States Customs & Border Protection ("CBP"), which is an agency of the United States Department of Homeland Security ("DHS").  The Border Patrol is a federal law enforcement agency responsible for the enforcement of the laws and regulations governing the admission of foreign-born persons to the United States.  The Border Patrol has responsibility for and oversight over policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.

10.      Defendant United States Customs & Border Protection is an agency of the United States Department of Homeland Security.  The United States Customs & Border Protection is responsible for securing the borders of the United States.  The United States Customs & Border Protection has authority over policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.

11.      Defendant Department of Homeland Security is a Cabinet-level department that is responsible for the coordination and unification of national security efforts.  The Department of Homeland Security has authority over policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.

12.      Defendant John C. Bates is the Chief Patrol Agent for the Blaine Sector of the Border Patrol.  In that capacity, Defendant Bates has direct responsibility for and oversight over

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Blaine Sector Border Patrol policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.  Defendant Bates is sued in his official capacity.

13.     Defendant Janet Napolitano is the Secretary of the DHS vested with all functions of all officers, employees, and organizational units of DHS.  Defendant Napolitano has authority over all DHS policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.  Defendant Napolitano is sued in her official capacity.

14.     Defendant David Aguilar is the Acting Commissioner of CBP.  In that capacity, Defendant Aguilar has authority over all CBP policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.  Defendant Aguilar is sued in his official capacity.

15.     Defendant Michael J. Fisher is Chief of the Border Patrol.  In that capacity, Defendant Fisher has direct responsibility for and oversight over Border Patrol policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.  Defendant Fisher is sued in his official capacity.

16.     Defendant Jay Cumbow is the Agent in Charge for the Port Angeles Office of the Olympic Peninsula of the Border Patrol.  In that capacity, Defendant Cumbow has direct responsibility for and oversight over Border Patrol policies, procedures, and practices relating to stopping and interrogating individuals on Washington State's Olympic Peninsula.  Defendant Cumbow is sued in his official capacity.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343.

18.     Venue in the Western District of Washington is proper under 28 U.S.C. § 1391(e)(1).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

19.     Declaratory relief is authorized under 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57.  Defendants' actions constitute agency action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551, authorizing injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702 and Fed. R. Civ. P. 65.

## ALLEGATIONS

20.     During or around the winter of 2008-2009, at Forks on the Olympic Peninsula, Plaintiff Sanchez was traveling in a vehicle that was followed by one or more Border Patrol agents.  When Plaintiff Sanchez arrived at his house, the Border Patrol agents approached him. Plaintiff Sanchez began to record the stop with his cell phone.  At this point, the agents backed away.

21.     On information and belief, the Border Patrol lacked reasonable suspicion to justify this stop.  On information and belief, it is alleged that the Border Patrol selected this vehicle for this stop solely because Plaintiff Sanchez appeared to the Border Patrol agents to be a person of color based on his complexion and hair color.

22.     During or around the summer of 2009, near Forks on the Olympic Peninsula, Plaintiff Sanchez and a member of his family were traveling in a vehicle that was stopped by Border Patrol agents.  During the stop, Plaintiff Sanchez was interrogated by two Border Patrol agents regarding his immigration status.  Border Patrol agents told Plaintiff Sanchez that they had stopped him because his vehicle windows were too dark.  But during the stop, the agents did not ask for his insurance or registration.  When Plaintiff Sanchez provided those documents, the agents refused to inspect them.  The agents only wanted to see his ID and asked him how long he had been in the United States.

23.     On information and belief, the Border Patrol lacked reasonable suspicion to justify this stop and interrogation.  On information and belief, it is alleged that the Border Patrol selected this vehicle for this stop and interrogation solely because Plaintiff Sanchez

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 6

appeared to the Border Patrol agents to be a person of color based on his complexion and hair color.

24.     During or around the fall of 2011, at Forks on the Olympic Peninsula, Plaintiff Sanchez was traveling in a vehicle that was also stopped by one or more Border Patrol agents. During the stop, Plaintiff Sanchez was interrogated by two Border Patrol agents regarding his immigration status.  Again, the Border Patrol agents told him that they had stopped him because the windows of the vehicle were too dark.  But the driver's side window was not tinted.  And again, the agents only wanted to see Plaintiff Sanchez's ID and asked him how long he had been in the United States.

25.     On information and belief, the Border Patrol lacked reasonable suspicion to justify this stop and interrogation.  On information and belief, it is alleged that the Border Patrol selected this vehicle for this stop and interrogation solely because Plaintiff Sanchez appeared to the Border Patrol agents to be a person of color based on his complexion and hair color.

26.     Shortly after the most recent stop, Plaintiff Sanchez tried to file a complaint with Border Patrol because its agents were selecting his vehicles for stop and interrogation solely because he appeared to Border Patrol agents to be a person of color based on his complexion and hair color.  The Border Patrol supervisor would not give him the names of the agents that had stopped his vehicles and would not take a complaint over the phone.  When asked by Plaintiff Sanchez why Border Patrol agents repeatedly stopped and interrogated him regarding his immigration status, the Border Patrol supervisor stated: "We have certain cars that we need to pull over."

27.     On or about July 22, 2011, at Port Angeles on the Olympic Peninsula, Plaintiff Ramos Contreras and four others were traveling in a vehicle that was stopped by Border Patrol agents.  Once stopped, a Border Patrol agent tried unsuccessfully to grab the keys from the vehicle.  The driver handed the keys to the Border Patrol agent; the agent retained the keys for

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the duration of the stop.  During the stop, Plaintiff Ramos Contreras was interrogated by four Border Patrol agents regarding his immigration status.  The Border Patrol agents failed to provide Plaintiff Ramos Contreras with a reason for the stop, but insisted that the occupants hand over their identifying documents.

28.     On information and belief, the Border Patrol lacked reasonable suspicion to justify this stop and interrogation.  On information and belief, it is alleged that the Border Patrol selected this vehicle for this stop and interrogation solely because Plaintiff Ramos Contreras and the other occupants appeared to the Border Patrol agents to be persons of color based on their complexion and hair color.

29.     Plaintiff Ramos Contreras was also questioned by Border Patrol outside the Clallam County District Courthouse in Forks on the Olympic Peninsula.  On or about December 2, 2010, while walking out of the courthouse, Plaintiff Ramos Contreras was approached by a plainclothes Border Patrol agent who questioned him regarding his immigration status.  The Border Patrol agent asked Plaintiff Ramos Contreras where he lived and where he was born.

30.     On information and belief, the Border Patrol agent selected Plaintiff Ramos Contreras for this interrogation solely because he appeared to the Border Patrol agent to be a person of color based on his complexion and hair color.

31.     On or about October 15, 2011, near Clallam Bay on the Olympic Peninsula, Plaintiff Grimes was traveling in a vehicle that was stopped by a Border Patrol agent.  During the stop, the Border Patrol agent approached the passenger window of Plaintiff Grimes' car and had his hand on his holstered weapon.  The agent seemed scared and volatile and yelled at Plaintiff Grimes to roll down his windows.  During the stop, the agent did not provide a reason for stopping the vehicle.  Instead, Plaintiff Grimes was interrogated by the Border Patrol agent regarding his immigration status.  Plaintiff Grimes was wearing his correctional-officer uniform at the time of this stop.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

32.     On information and belief, the Border Patrol lacked reasonable suspicion to justify this stop and interrogation.  On information and belief, it is alleged that the Border Patrol selected this vehicle for this stop and interrogation solely because Plaintiff Grimes appeared to the Border Patrol agent to be a person of color based on his complexion and hair color.

33.     Each of the Plaintiffs has a reasonable fear that he is likely to again be stopped and questioned on the Olympic Peninsula by Border Patrol agents without appropriate reasonable suspicion for such actions.

34.     Historical events, current developments, and public statements by Defendants indicate that Border Patrol agents intend to continue stopping vehicles and interrogating vehicle occupants on the Olympic Peninsula without appropriate reasonable suspicion.

35.     Thirty years ago—in 1982—a class action complaint for injunctive and declaratory relief was filed in the United States District Court for the Eastern District of Washington, captioned *Nicacio v. United States Immigration & Naturalization Service,* Cause No. C82-1018 RJM ("*Nicacio*").  The Chief Border Patrol agent for the Blaine Sector, which has jurisdiction for the Olympic Peninsula, was one of the Defendants in that lawsuit.  *See Nicacio v. INS*, 595 F. Supp. 19 (E.D. Wash. 1984), *aff'd*, 769 F.2d 1133 (9th Cir. 1985), *amended by* 770 F.2d 700 (9th Cir. 1985).

36.     In *Nicacio*, the District Court found that:

> INS agents were regularly conducting roving patrol motor vehicle stops, detentions and interrogations in the Yakima Valley area of the Spokane Sector.  Many of the stops were based solely on Hispanic appearance, or the agents' subjective feelings or intuition, or the suspected illegal aliens' innocuous behavior or appearance traits.

> Persons stopped were required in most cases to provide identification or documentation of legal presence in the United States.  Defendants keep no record of automobile stops in which no illegal aliens are apprehended.

*Id*. at 21.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

37.   The District Court entered judgment for the plaintiffs and the certified class that they represented ("All persons of Mexican, Latin, or Hispanic appearance who have been, are, or will be traveling by motor vehicle on the highways of the State of Washington."), the operative portions of which are as follows:

> 1.   IT IS HEREBY ORDERED:  It is unlawful for the United States Immigration and Naturalization Service, its agents and employees and Border Patrol agents:  To stop, detain, and interrogate persons of Hispanic appearance traveling by motor vehicle on the highways of the State of Washington without a valid search or arrest warrant, or unless they have a particularized reasonable suspicion based on specific articulable facts and rational inferences therefrom that the occupant of a vehicle is an alien unlawfully in the United States.   Further, these specific articulable facts justifying the motor vehicle stops must be based upon particularized objective factors, and not solely upon the agents' individual subjective impressions.

> 2.   IT IS FURTHER ORDERED that the United States Immigration and Naturalization Service, its agents and employees and Border Patrol agents:  Shall not stop, detain, and interrogate persons of Hispanic appearance traveling by motor vehicle on the roadways of the State of Washington without documenting in writing the specific articulable facts on which defendants base their particularized reasonable suspicion for stopping, detaining and interrogating these persons.   Defendants shall maintain this documentation for a period of not less than three years.

*Id.* at 26.

38.   The District Court also required that "[c]opies of [its] Judgment shall be posted in the various INS and Border Patrol offices within the region and the supervisory personnel of INS shall proceed forthwith to implement the provisions of this Judgment."  *Id.*

39.   The defendants in *Nicacio* appealed; the Court of Appeals affirmed.  *Nicacio v. INS*, 797 F.2d 700 (9th Cir. 1985).  In addition to challenging the merits of the District Court's findings and conclusions, the defendants argued that the injunction requiring them to document the grounds for vehicle stops that did not result in an arrest or seizure of property was "excessively intrusive and burdensome."  *Id.* at 706.  The Court of Appeals held that the record did not support the defendants' contention of burden and intrusiveness, and, in so holding,

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

stated, "Indeed, it is difficult to imagine a remedy that would be less burdensome to the government and at the same time serve in any way to prevent future constitutional violations." *Id*. Further, the Court of Appeals noted that the District Court would retain jurisdiction and that the defendants could seek to have the injunction modified "if a change in circumstances so requires." *Id.*

40.     The defendants in *Nicacio* never sought to modify or seek relief from the affirmed judgment.

41.     On September 2, 2004, with reference to *Nicacio*, a request pursuant to the Freedom of Information Act ("FOIA") was made for documents regarding the interrogations of persons who appeared to be Hispanic and were traveling on the State of Washington's roads and regarding the required postings of the *Nicacio* judgment.  The Department of Homeland Security, Immigration and Customs Enforcement, responded to this FOIA request on August 3, 2005, indicating that it had "located no records that are responsive to [the] request."  With reference to *Nicacio*, this FOIA response stated as follows:

> After reviewing *Nicacio v. U.S.*, we found no order requiring a posting of the decision.  It was ordered that INS could not stop, detain, and interrogate persons of Hispanic appearance traveling by motor vehicle in the State of Washington without documenting, in writing, the specific facts for stopping, detaining and interrogating these persons.  INS is required to maintain this documentation for a period of three years.  Records of all apprehensions are being documented on either an I-44 or an I-213 (Record of Deportable Alien) and then filed in the individual's alien file.  Furthermore, Detention and Removal Operations (DRO) does not initiate any stops unless they are targeting a specific individual with a final order of removal.

42.     This FOIA response indicates that Defendants are not complying with the documentation and posting requirements of the judgment in *Nicacio*, especially as to individuals initially stopped but ultimately not apprehended as removable (for which an I-213 form is used) or where no property was seized (and documented on an I-44 form).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 11

25610-0034/LEGAL23477356.2

43.     Starting in 2007, Defendants established periodic immigration checkpoints along roadways on the Olympic Peninsula in order to try to intercept non-citizens without documented permission to be in the United States.

44.     The Olympic Peninsula checkpoints were set up without advance notice and at locations where they could not be avoided by travelers who come upon them along the roads on which they are placed.

45.     Many residents of the area and others who traveled on those roads found these checkpoints objectionable.  *See, e.g.*, Manuel Valdes, *Border Patrol roadblock irks Forks*, Seattle Post-Intelligencer, Sept. 8, 2008.

46.     Public outcry over the Border Patrol's interior checkpoints was severe.  In response to constituent concerns, both United States Senator Maria Cantwell and United States Representative Norm Dicks wrote to Defendant Napolitano.

47.     In his February 9, 2009 letter, Representative Dicks questioned the value of the Olympic Peninsula checkpoint strategy and reported constituent complaints that "some degree of ethnic profiling has been occurring."

48.     Senator Maria Cantwell wrote to Defendant Napolitano on March 27, 2009, expressing concern about the Border Patrol's overly aggressive police tactics.  Specifically, she reported that constituents have complained about Border Patrol agents targeting "Muslim, Hispanic, and tribal communities . . . solely on their race, ethnicity, or religion."

49.     In response to the public outcry and threat of legal action, the Border Patrol ceased operating checkpoints on the Olympic Peninsula.

50.     Instead, however, the Border Patrol began a practice of stopping individual vehicles for questioning without appropriate reasonable suspicion.  Like the checkpoints, this current practice of "roving patrol" stops as implemented by the Border Patrol is not focused on persons that the Border Patrol believes to have recently crossed the border from Canada.  The

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 12

25610-0034/LEGAL23477356.2

Border Patrol's practice of roving patrol stops has become increasingly prevalent in recent years.

51.     It is this policy and practice, which echoes the days of *Nicacio* thirty years ago, that is the subject of this lawsuit.

52.     It has long been established that a Border Patrol agent violates the Fourth Amendment of the United States Constitution when the agent stops a vehicle without reasonable suspicion of wrongdoing.  *See, e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 883 (1975) ("[A] requirement of reasonable suspicion for stops allows the Government adequate means of guarding the public interest and also protects residents of the border areas from indiscriminate official interference.  Under the circumstances, and even though the intrusion incident to a stop is modest, we conclude that it is not 'reasonable' under the Fourth Amendment to make such stops on a random basis."); *see also United States v. Mallides*, 473 F.2d 859, 862 (9th Cir. 1973) ("Neither the Supreme Court nor this court has ever upheld the legality of a detention based upon an officer's unsupported intuition, and we refuse to do so now.").

53.     The requirement of reasonable suspicion necessitates "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle[] contain[s] aliens who may be illegally in the country."  *Brignoni-Ponce*, 422 U.S. at 884.

54.     Reasonable suspicion cannot be based solely upon the ethnic and/or racial appearance of a vehicle's occupants.  *Id.* at 886.

55.     Moreover, Congress has limited the statutory authority of Border Patrol agents to stop vehicles away from the border.  According to 8 U.S.C. § 1357(a)(3), a Border Patrol agent is only allowed, "within a reasonable distance from any external boundary of the United States, to board and search for aliens any . . . vehicle . . . *for the purpose of patrolling the border* to prevent the illegal entry of aliens into the United States[.]"  (Emphasis added).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

56.     The accompanying regulations further limit a Border Patrol agent by requiring that an agent must have a "reasonable suspicion, based upon specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States" in order to stop a vehicle or participate in a vehicle stop.  8 C.F.R. § 287.8(b)(2).

57.     On information and belief, Defendants have implemented a practice of stopping vehicles or participating in vehicle stops based on a hunch or intuition, including stops based solely on the ethnic and/or racial appearance of the occupants of the vehicle, and thus without sufficient suspicion on which to base the stop.

58.     On information and belief, Defendants are aware that Border Patrol agents are making stops on the Olympic Peninsula based on nothing more than a hunch or intuition, and that they have no basis to assume that the cars that they have stopped have entered from the border or are carrying persons coming in from the border.

59.     On information and belief, Defendants are aware that the practice of stopping vehicles or participating in vehicle stops based on a hunch or intuition results in stops based only on the racial and/or ethnic appearance of vehicle occupants.

60.     It is exactly this kind of discriminatory policing on the basis of ethnic and/or racial appearance that the Department of Justice flatly condemned in its investigation of the Maricopa County Arizona Sheriff's Office.  The Department of Justice found that the Maricopa Sheriff's Office had engaged in racial profiling of Latinos.  The report charges that the Maricopa County Sheriff's Office, in the course of immigration-related activities, frequently stopped or arrested Latinos without either probable cause or reasonable suspicion.  As a result, the Department of Homeland Security revoked the authority of the Maricopa County Sheriff's Office to enforce immigration laws pursuant to a prior written agreement under 8 U.S.C. § 1357(g), and the Department of Justice threatened legal action against that Sheriff's Office to ensure that the discriminatory policing ends.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

61.     On information and belief, Border Patrol agents working on the Olympic Peninsula have not been given adequate training regarding the circumstances under which vehicles may be stopped or vehicle occupants interrogated consistent with the United States Constitution.

62.     Additionally, Defendants have failed to establish policies and procedures that ensure that Border Patrol agents working on the Olympic Peninsula understand and can implement their training regarding the circumstances under which vehicles may be stopped or vehicle occupants interrogated consistent with the United States Constitution.  According to a December 2011 Government Accountability Office report on Border Security, the Border Patrol lacks a national policy assigning responsibility to ensure that Border Patrol agents are sufficiently trained.

63.     On information and belief, Defendants are aware that Border Patrol agents are not completing paperwork that documents the bases for their reasonable suspicion for all stops, specifically with respect to stops where Border Patrol agents discover that the person who is stopped is lawfully present in the United States.

64.     On information and belief, the Border Patrol does not have in place a practice and procedure requiring the completion of paperwork that sets forth the bases of reasonable suspicion for all stops.  The lack of an established policy and procedure encourages or at least allows for the Border Patrol's stopping of vehicles or participating in vehicle stops that are based on nothing other than the ethnic and/or racial appearance of a vehicle's occupants.

65.     On information and belief, one factor that has resulted in the ever-increasing frequency and number of unlawful vehicle stops is the fact that there has been a dramatic increase in the number of Border Patrol agents situated on the Olympic Peninsula—and the number of agents continues to increase.  Indeed, in the last decade the Port Angeles Office has grown from less than five agents to over forty agents.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

66.     On information and belief, Border Patrol agents working on the Olympic Peninsula do not have enough work preventing the "illegal entry of aliens into the United States," 8 U.S.C. § 1357(a)(3), across the Canada-United States border and have instead been directed or given permission to engage or participate in the detention of vehicles and interrogation of vehicle occupants who have not recently crossed the Canada-United States border.

67.     On July 29, 2011, Christian Sanchez provided testimony before the Advisory Committee on Transparency.  Mr. Sanchez testified that he was employed as a Border Patrol agent, and that he had been stationed at Port Angeles on the Olympic Peninsula since September 2009.  He testified that the number of Border Patrol officers in the Port Angeles office recently increased from four to forty and is still growing.  As a stark example of this growth, a new Border Patrol office is being constructed in Port Angeles at a taxpayer-funded cost of around $6 million.  *See, e.g.*, *New Border Patrol Agent in Charge at Port Angeles*, Seattle Post-Intelligencer, February 6, 2012.

68.     Mr. Sanchez also testified that the Port Angeles office was "in a remote area, with no border activity."  He testified that this situation has resulted in "high-energy men" being "bored," a situation that he characterized as a "bad combination."  He further stated that the result was "bad morale and a dangerously unhealthy work environment."

69.     Mr. Sanchez's testimony has brought added public attention to the practice and policy of vehicle stops on the Olympic Peninsula, and in response Border Patrol representatives have spoken publicly about their "mission" on the Olympic Peninsula.

70.     Public statements by Border Patrol representatives demonstrates that Border Patrol's current policy and practice goes well beyond stopping individuals based upon reasonable suspicion.  Indeed, on August 16, 2011, the *Peninsula Daily News* reported on a presentation that Station Supervisor Jose Romero made to the Port Angeles Regional Chamber of Commerce.  This story quotes Mr. Romero as saying that agents from his office are in areas

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

throughout the Olympic Peninsula "pretty much every day," and that "We are the only law enforcement agency charged with protecting the whole country by patrolling the streets every day."

71.    This same news article quotes Romero as stating, "Questioning someone's immigration status comes partly from a 'gut feeling' the agent might have about the person."

## CLASS ACTION ALLEGATIONS

72.    Plaintiffs bring this class action on behalf of themselves and all others similarly situated.  The proposed Class is defined as follows:

> All persons operating or occupying a vehicle on the Olympic Peninsula who have been or will be in the future stopped, detained and/or interrogated by Border Patrol, excluding those vehicle operators or occupants disembarking from the international ferry in Port Angeles.

73.    Plaintiffs and members of the Class seek class-wide equitable, declaratory and injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2).

74.    Membership in the Class is so numerous that individual joinder of all of their members would be impracticable.  Such joinder is also impracticable as membership in the Class will change over time because many members of the Class are unaware of their rights, and because many members of the Class have limited access to legal services and representation.

75.    There are many facts and questions of law common to the representative Plaintiffs and the members of the Class, including the following:

a.    The legality of stopping, detaining, and interrogating Plaintiffs and members of the Class.

b.    Border Patrol's policy, procedure, or practice of stopping vehicles or participating in vehicle stops and interrogating vehicle occupants on the Olympic Peninsula without appropriate reasonable suspicion.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

c.     Border Patrol's policy, procedure, or practice of stopping vehicles or participating in vehicle stops and interrogating vehicle occupants on the Olympic Peninsula based on hunch or intuition.

d.     Border Patrol's failure to maintain records of all stops, including those stops where the agents determine that the persons stopped have lawful status to reside in the United States.

76.     The claims of the individual Plaintiffs are typical of the claims of the members of the Class.

77.     The individual Plaintiffs will fairly and adequately protect the interests of the members of the Class.  There is no conflict between the interests of the individual Plaintiffs and members of the Class with respect to the issues in this action.

78.     Plaintiffs have retained legal counsel who are experienced in civil rights and class action litigation, and who will adequately represent the interests of the members of the Class as well as those of the individual Plaintiffs.

79.     Defendants have acted on grounds generally applicable to both the individual Plaintiffs and the members of the Class, making declaratory and injunctive relief appropriate as to the Class as well as the individual Plaintiffs.

## FIRST CLAIM FOR RELIEF

### Violation of the Fourth Amendment to the United States Constitution

80.     Plaintiffs repeat and reallege each of the allegations set forth above.

81.     Defendants' unlawful practice of stopping vehicles without reasonable suspicion, as set forth above, in violation of Plaintiffs' and Class Members' Fourth Amendment rights, has adversely affected or aggrieved Plaintiffs and Class Members and caused them to suffer harm.  Moreover, Defendants' unlawful practice is subject to repetition and is likely to continue, placing Plaintiffs and Class Members at an imminent risk of suffering a legal wrong.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

25610-0034/LEGAL23477356.2

82.    Plaintiffs and Class Members are entitled to judicial review of Defendants' actions and are entitled to relief including a declaratory judgment and injunction.

## SECOND CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1357

83.    Plaintiffs repeat and reallege each of the allegations set forth above.

84.    Border Patrol agents have the power to arrest without warrant, "within a reasonable distance from any external boundary of the United States, to board and search for aliens any . . . vehicle . . . for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States." 8 U.S.C. § 1357(a)(3).

85.    However, in order to stop a vehicle, the Border Patrol agent must have "a reasonable suspicion based upon specific articulable facts, that the person being questioned is, or is attempting to be engaged in an offense against the United States or is an alien illegally in the United States." 8 C.F.R. § 287.8(b)(2).

86.    By stopping the Plaintiffs and Class Members without reasonable suspicion, as set forth in detail above, Defendants' actions have exceeded the statutory authority provided by 8 U.S.C. § 1357(a)(3) and its implementing regulations at 8 C.F.R. § 287.  Defendants' unlawful practices have adversely affected or aggrieved Plaintiffs and Class Members and have caused them to suffer harm.  Moreover, Defendants' unlawful practice is subject to repetition and is likely to continue, placing Plaintiffs and Class Members at an imminent risk of suffering a legal wrong.

87.    Plaintiffs and Class Members are entitled to judicial review of Defendants' actions under 5 U.S.C. §§ 702 and 706 and are entitled to relief including a declaratory judgment and injunction.

## REQUEST FOR RELIEF

WHEREFORE the Plaintiffs and Class Members request that the Court:

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1.  Certify the class according to the definition provided above and appoint the undersigned as class counsel;

2.  Declare that Defendants have violated Plaintiffs' and Class Members' rights under the Fourth Amendment to the United States Constitution;

3.  Declare that Defendants' actions are in excess of Defendants' statutory jurisdiction or authority under 8 U.S.C. § 1357, and its implementing regulations at 8 C.F.R. § 287;

4.  Declare that it is unlawful for Border Patrol agents to stop or participate in the stop of a vehicle without a valid search or arrest warrant unless the Border Patrol agent has a particularized reasonable suspicion based upon specific and articulable facts and rational inferences therefrom that the occupant of the vehicle is a person unlawfully in the United States;

5.  Declare that it is a violation of the Fourth Amendment to the United States Constitution to stop or participate in a stop of a vehicle based solely on the occupants' ethnic and/or racial appearance;

6.  Enjoin Defendants or their personnel from stopping vehicles or participating in stops:

    a.  without reasonable suspicion that the occupants are not legally present in the United States; and

    b.  until each Border Patrol agent has received training as to what constitutes reasonable suspicion for a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop; and

    c.  until each Border Patrol agent has demonstrated, through testing, that he or she understands what constitutes reasonable suspicion to support a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 20

7.      Enjoin Defendants' unlawful conduct and require:

a.      Defendants to maintain complete and accurate records that document that each agent has received training as to what constitutes reasonable suspicion to support a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop;

b.      Defendants to maintain complete and accurate records that document that each agent has been tested, and understands what constitutes reasonable suspicion to support a Border Patrol vehicle stop or for Border Patrol to participate in a vehicle stop; and

c.      Defendants to prepare documentation for all vehicle stops made by Border Patrol agents or in which Border Patrol agents participate, that sets forth in detail the basis for the reasonable suspicion used to justify the vehicle stop or interrogation of its occupants, and to maintain this documentation in such a manner that it is easily accessible for examination by a special master to ensure compliance, regardless of whether the Border Patrol ultimately determines that the occupant(s) stopped are undocumented citizens;

8.      Appoint a special master, pursuant to Fed. R. Civ. P. 53, to oversee and ensure implementation of the above injunctive measures, and to additionally audit and inspect Defendants' documentation to assure future compliance;

9.      Award Plaintiffs and Class Members the attorneys' fees and costs they incur herein, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

10.     Grant any other relief that the Court may determine to be just and equitable.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 21

25610-0034/LEGAL23477356.2

DATED:  April 26, 2012

s/ Nicholas P. Gellert
Nicholas P. Gellert, WSBA No. 18041

s/ Brendan J. Peters
Brendan J. Peters, WSBA No. 34490

s/ Javier F. Garcia
Javier F. Garcia, WSBA No. 38259

s/ Steven D. Merriman
Steven D. Merriman, WSBA 44035
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiffs
Cooperating Attorney for the ACLU and NWIRP

s/ Sarah Dunne
Sarah Dunne, WSBA No. 34869

s/ La Rond Baker
La Rond Baker, WSBA No. 43610
ACLU of Washington Foundation
901 5th Ave, Suite 630
Seattle, WA 98164
Telephone:  206.624.2184

s/ Matt Adams
Matt Adams, WSBA No. 28287
Northwest Immigrant Rights Project
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone:  206.957.8611
Facsimile:  206.587.4009
Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF (No. _____) – 22

25610-0034/LEGAL23477356.2